**EXERCISE OF EMINENT DOMAIN BY A RAILWAY COMPANY.**

Circuit Court of Cuyahoga County.

THE SCHATZINGER REALTY COMPANY v. THE CLEVELAND SHORT LINE RAILROAD COMPANY ET AL.

Decided, December 19, 1910.

*Appropriation by Railroad Company—Petition—Articles of Incorporation as Evidence—Interest of Another Company—Belt or Terminal Railroads.*

1. In appropriation proceedings by a railroad company for its original right-of-way, it is not necessary that the petition state the termini of the road, or that the parcels of land described in the petition are all the parcels within the county which are sought to be appropriated.

2. Articles and amended articles of incorporation of a railroad company are proper evidence of its incorporation and right to appropriate lands.

3. In an appropriation case brought by a railroad company it is not competent for the land owners to show that some other railroad company is interested in the appropriating company and will be benefited by the result of the proceedings.

4. A belt or terminal railroad company, duly incorporated under the laws of Ohio, may exercise the right of eminent domain.

*P. G. Kassulker,* for plaintiff in error.
*Kline. Tolles & Morley,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

The relation of the parties here is the reverse of that which they sustained to one another in the original action, which was brought in the court of insolvency. They will be designated, however, in this opinion as though the relation was as it was in such original action. Each of the parties is a corporation. The plaintiff is engaged in the construction of a railroad from a point easterly of the city of Cleveland to a point westerly of the said city. The defendant owns certain real estate through which the plaintiff seeks to construct its road. The plaintiff filed its petition in the court of insolvency, setting out that it was a

railroad company; that it was constructing a railroad; that it was necessary for the construction of its road that certain real estate described in the petition, owned by the defendant and located in this county, should be used for the purpose of such road; that it had been unable to agree with the owner of such real estate and prayed for the appropriation of the property by proper proceedings.

It is claimed that this petition did not warrant any proceeding under it, because it failed to state such facts as authorize the proceedings to appropriate.  The statute in force at the time regulating such matters was Section 6416, Revised Statutes, and reads:

"In such a case the corporation may file a petition with the probate judge, verified as in a civil action, containing a specific description of each parcel of property, interest, or right, within the county, sought to be appropriated, the work, if any, intended to be constructed thereon, the use to which its land is to be applied, the necessity for the appropriation, the name of the owner of each parcel, if known, or if not known a statement of that fact, the names of all persons having or claiming an interest, legal or equitable, in the property, so far as they can be ascertained, and a prayer for its appropriation."

It is objected that the petition was bad because it failed to state the termini of the road; that it did not state that the parcel sought to be appropriated was the only parcel in the county which it desired to appropriate.  So far as the failure to state the termini of the road is concerned, it is sufficient to say that the statute does not require that the petition shall give such termini.  So far as the other question as to the property sought to be appropriated is concerned, it seems enough to say that it did describe all the property which it sought to appropriate in that proceeding, and it seems a novel proposition that it should be required to contain the negative averment that it does not desire to appropriate any other real estate in the county.  It does describe all it seeks to appropriate in this proceeding, and that we hold to be sufficient.

But, it is objected, that the court of insolvency was without jurisdiction, because it is said that the act conferring such juris-

diction is in contravention of the provisions of the Constitution of the state. This is not an open question in this court, nor indeed in this state. Both this court and the Supreme Court have held that the act *is* constitutional and that the court has jurisdiction.

It is further urged that. the court erred in admitting the articles of incorporation and the amended articles of incorporation of the plaintiff. The plaintiff was required to show that it was incorporated as a railroad company, having the authority of eminent domain; the proper way to do this was by showing its articles of incorporation and any amended articles of incorporation which had been filed with the Secretary of State and certified by him, and there was no error in admitting this evidence.

It is urged further that the evidence on the principal hearing as to the necessity of the appropriation and the failure of the plaintiff and the defendant to agree upon a compensation for the land to be used was not sufficient. This objection is not well taken. It was shown by the testimony of Mr. Hopkins that the line had been located where it would be necessary to have it. However, a sufficient answer to this proposition is that the evidence is not all in the bill of exceptions. There was presented in evidence a blue print, which is spoken of by Hopkins and other witnesses, and it is said shows the line of the road. The bill of exceptions says that such blue print is attached to the bill marked "Exhibit B" and made a part of such bill, and there is no such blue print with the bill, and we are therefore left without that evidence on which the court acted in determining the question of the necessity for the appropriation and the failure to agree with the owner, and this failure of the bill to give us all the evidence disposes of the whole question of our passing upon this case upon the weight of the evidence. We can not do it, because we have not all the evidence.

But it is said that there was error on the part of the court of insolvency in refusing to permit evidence to show that the Lake Shore & Michigan Southern Railway Company was interested in this railroad and was the real party in interest. It is

enough on this point to say that this railroad company, the plaintiff in this action, was under the laws of Ohio authorized to appropriate lands necessary for the construction and operation of its road. If it had any contract with another company which would make it unlawful for it to operate its road after it was constructed, that right could be tested in a proper case. Not only that, but if this railroad company had obtained its franchise for any unlawful purpose, a proceeding in *quo warranto* would have been the proper action in which to determine that question. It would have been erroneous for the court to have admitted evidence showing what it was sought to be shown, that there was a contract as to the use of this road between the plaintiff and the Lake Shore & Michigan Southern Railway Company. The articles of incorporation of the plaintiff, as already said, established that it was a corporation organized under the laws of Ohio pertaining to the incorporation of railroad companies, and the law authorizes such a company to exercise the right of eminent domain; therefore, it would have been incompetent for the court of insolvency to have held that it had not such right because of some contract it had made with somebody else. However, the court did allow a cross-examination of Mr. Hopkins, an officer of the plaintiff, to a very considerable extent, in which it appeared that no such contract existed as could by any possibility have interfered with the rights of the plaintiff in the matter of this appropriation. Our statute, Section 3300, authorizes one company to aid another in the construction of its road, by means of subscription to its capital stock, or otherwise, for the purpose of forming a connection of the roads of the companies, if the road of the company so aided will not when constructed form a competing line. There was no evidence here tending to show that this road, when constructed, would be a competing line with the Lake Shore & Michigan Southern Railway Company. The real claim on the part of the defendant was and is that because this proposed road would connect at each terminus with the track of the Lake Shore & Michigan Southern Railway Company, it was really an adjunct of such company, and that for some reason that deprived it of its right of eminent domain.

We think this is completely answered by the case of *State* v. *T. & R. T. Railroad Co.*, 24th C. C., 321. That was an action in *quo warranto,* asking to prevent the railway company from appropriating a right-of-way upon which it proposed to construct a track to connect its main line with certain industries, and it was held that the company had a right to make such appropriation.

In the case of *State, ex rel,* v. *Martin,* 51 Kas., 468 (33 Pac., 9), it is held that under the general law providing for the incorporation of railroad companies, a circular or terminal railroad might be projected and constructed for the purpose of switching cars from one part of the city to the other, and of affording terminal facilities to other railroad companies, and that a company organized for that purpose might exercise the power of eminent domain. And in a note to *Bridwell* v. *Gate City Terminal Company,* reported in the 10th L. R. A. (New Series), at page 909, this language is used:

"It is a well-settled fact and principle of law, and one supported by all the decisions that can be found, that belt or terminal railway companies and union passenger station companies, that is, companies organized for the purpose of furnishing connecting terminal and depot facilities to other railroad companies, are companies organized for a public use, and are lawfully entitled to exercise the power of eminent domain."

The result reached in the court of insolvency was that the land sought to be appropriated was necessary for the construction and operation of the road; that the defendant had failed to agree upon the compensation therefor, and then a jury was impaneled for the purpose of having the damages assessed.

Upon proceedings in error being prosecuted to the court of common pleas, this judgment of the court of insolvency was affirmed, and the present proceeding brought to reverse the judgment of the court of common pleas in so affirming the judgment of the court of insolvency, is here affirmed.